**In re ADOPTION OF LAUCK et al.**

[Cite as *In re Adoption of Lauck* (1992), 82 Ohio App.3d 348.]

Court of Appeals of Ohio,
Summit County.

No. 15493.

Decided Sept. 2, 1992.

*Barry M. Ward,* for the children and Paul Lauck.

*Vicki L. Epling* and *Western Reserve Legal Service;* and *Michael E. Quinn,* for William Nickison III.

---

REECE, Judge.

This cause was heard upon the appeal of William Nickison III ("respondent") from the judgment of the Summit County Court of Common Pleas, Probate Division, holding that respondent's consent is not required in the adoption of his minor children by the appellee, Paul Lauck ("petitioner").

Respondent and Patricia Lauck (f.k.a. Patricia Nickison) were married in March 1982. They have two children, Jennifer M. and Kenneth Lloyd Nickison, born August 8, 1982, and July 10, 1984, respectively. The marriage was dissolved May 9, 1985, with Patricia receiving custody of the children pursuant to the dissolution decree.

Patricia married petitioner on February 14, 1987. Fourteen days later, on February 28, 1987, respondent began serving a term of incarceration as a result of a criminal conviction. He is currently confined to the London Correctional Facility, becoming eligible for parole in 1995.

As the children's stepfather, petitioner filed for their adoption on October 10, 1990. Petitioner alleged, pursuant to R.C. 3107.07(A), that respondent's consent to the adoption was not necessary because respondent had failed, without justification, to support or communicate with the children during the one year preceding the filing of the petition. Thereafter, respondent filed his objections to the adoption.

A hearing on respondent's objections was held before a referee on June 11, 1991. At the commencement of the proceedings, the parties stipulated that respondent's failure to provide support for the children was justified due to his incarceration. The hearing proceeded solely on this issue of respondent's communication with his children. On August 5, 1991, the referee's report was filed with the court. The referee found that respondent failed, without justification, to communicate with his children for the requisite statutory period. Therefore, pursuant to R.C. 3107.07(A), the referee found that respondent's consent is not required, recommending that the adoption should proceed.

On November 25, 1991, the court, over respondent's timely objections, adopted the findings and recommendations of the referee. It is from this judgment that the respondent appeals raising two assignments of error.

Assignment of Error I

"The probate court erred as a matter of law by placing the burden of proof on respondent-appellant to show that any failure to communicate with his children was due to justifiable cause."

Under R.C. 3107.06(B), the adoption of these minor children requires the consent of the children's father. However, pursuant to R.C. 3107.07(A), such consent is not necessary when " * * * the parent has failed without justifiable cause to communicate with the minor or to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding either the filing of the adoption petition or the placement of the minor in the home of the petitioner."

In application, R.C. 3107.07(A) requires the court to make a two-part determination. First, the court must determine whether the petitioner has proven by clear and convincing evidence that the natural parent has failed for the one-year period to either support or communicate with his minor child. Once either a failure to support or to communicate has been found, the court must then decide whether such failure by the parent was justified. Respondent contends the court erred in placing upon him the burden to prove that his failure to communicate with his children was justified. In support of his position, he cites to the referee's report which states:

"In the case at bar, the petitioner has met his burden by credibly demonstrating to the court that there was an absence of communication between the natural father and the minors from October 9, 1989 to October 10, 1990. *The father has failed to show justification as the petitioner was able to prove by clear and convincing evidence that said failure was without justification.*" (Emphasis added.)

In construing R.C. 3107.07(A), the Ohio Supreme Court originally stated:

"The party petitioning for adoption has the burden of proving, by clear and convincing evidence, that the parent failed to communicate with the child during the requisite one-year period and that there was no justifiable cause for the failure of communication." *In re Adoption of Holcomb* (1985), 18 Ohio St.3d 361, 18 OBR 419, 481 N.E.2d 613, paragraph four of the syllabus. See, also, *In re Adoption of Masa* (1986), 23 Ohio St.3d 163, 23 OBR 330, 492 N.E.2d 140, paragraph one of the syllabus (extending the holding in *Holcomb*).

*Holcomb* and its progeny have been criticized for placing upon the petitioner in an adoption proceeding the burden to prove that the parent was not justified in failing to support or communicate with his child. The requirement that the petitioner prove a negative has been called an "oppressive and

unworkable rule." See *In re Adoption of Bovett* (1987), 33 Ohio St.3d 102, 106–107, 515 N.E.2d 919, 924 (Douglas, J., concurring).

In *Bovett* the court was urged to reconsider its holding in *Holcomb* and *Masa*, requiring the natural parent to prove the "without justifiable cause" portion of R.C. 3107.07(A). While declining to reverse its previous decisions, the court did hold that:

"Once the petitioner has established, by clear and convincing evidence, that the natural parent has failed to support the child for at least the requisite one-year period, the burden of going forward with the evidence shifts to the natural parent to show some facially justifiable cause for such failure. The burden of proof, however, remains with the petitioner." *Bovett, supra*, at paragraph two of the syllabus.

Thus, while the petitioner in an adoption proceeding has the burden to prove both steps under R.C. 3107.07(A), a natural parent may not simply remain silent. Once the petitioner has presented clear and convincing evidence that the parent has failed to support or communicate with his child for the statutory period, the parent then has the "burden of going forward with the evidence * * * to show some facially justifiable cause for such failure." *Id.* at 104, 515 N.E.2d at 922.

In the present case, we find no error in the referee's statement of the law as it pertains to respondent's burden to go forward with the evidence of justification. Accordingly, respondent's first assignment of error is overruled.

### Assignment of Error II

"The probate court's determination that respondent-appellant's failure to communicate with his children was without justifiable cause was against the manifest weight of the evidence."

In addressing respondent's second assignment of error, we are mindful that in civil cases "[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus; *Shear v. West Am. Ins. Co.* (1984), 11 Ohio St.3d 162, 164, 11 OBR 478, 480, 464 N.E.2d 545, 547. However, when the requisite degree of proof is clear and convincing, the evidence must be sufficient to "produce in the mind of the trier of facts a firm belief or conviction as to the

facts sought to be established." *Cross v. Ledford* (1954), 161 Ohio St. 469, 53 O.O. 361, 120 N.E.2d 118, paragraph three of the syllabus. In examining the record, our task is to determine whether the trier of fact had sufficient evidence before it to satisfy this heightened burden of proof. *Id.* at 477, 53 O.O. at 364, 120 N.E.2d at 123.

At trial, Patricia testified that she received a letter from respondent early in 1988. In response, she wrote a letter to respondent, dated March 18, 1988, in which she "tried to explain to [respondent] why [she and petitioner] wanted to adopt the kids." Patricia went on to state that "[petitioner] and I made a decision that it was time that we tried to get a good relationship with [respondent] so he wouldn't put us through a court hearing, and he would sign the [adoption] papers."

After this initial correspondence, Patricia admitted to throwing away three of respondent's letters received over the following two to three months. Future letters from respondent were refused and returned unopened. Three envelopes and one postcard, postmarked from February 1 through July 14, 1989, were introduced by the respondent. Two of the envelopes were addressed directly to respondent's children. On cross-examination, Patricia admitted that on each of these she wrote "return to sender."

Patricia also testified that respondent made telephone calls to her home. The following was elicited on direct examination:

"[By Attorney for Petitioner]

"Q. Did he [respondent] ever make telephone calls to you from the institution?

"[By Patricia Lauck]

"A. I began receiving harassing phone calls after we filed the petition. I know that there was one or two prior to that, but I'm not positive of when I received those. Those were collect calls. He didn't ask for anybody. It just said, 'M.C.I. Operator. Will you accept a collect call from Bill from a correctional institution?' and I said, 'No.'"

In explaining why she prohibited respondent's attempts to communicate with his children, Patricia testified that:

"We [Patricia and petitioner] had made our decision to adopt the children. They [Jennifer and Kenneth] didn't know who [respondent] was. And I felt that there was no need. And I sent them back to let him know that we just didn't want the communication."

Justification of a parent's failure to communicate with his child is shown when there has been "significant interference by a custodial parent with communication between the non-custodial parent and the child, or significant discouragement of such communication." *Holcomb*, 18 Ohio St.3d at 367–368, 18 OBR at 425, 481 N.E.2d at 620; *In re Adoption of Hupp* (1982), 9 Ohio App.3d 128, 9 OBR 192, 458 N.E.2d 878. In examining whether the parent's failure was justified, the court is not restricted to focusing only on events occurring during the statutory one-year period. The court must also examine preceding events having any bearing on the parent's failure to communicate with his child. See *In re Adoption of Shea* (July 24, 1990), Franklin App. No. 90AP–245, unreported, at 8–9, 1990 WL 106468.

In the case *sub judice*, the evidence demonstrates that petitioner and his wife made a concerted effort to thwart respondent's efforts at communicating with his children. While they may believe their actions were in the children's best interest, they cannot undertake to prohibit communication and then claim the benefits of their efforts under R.C. 3107.07(A).

As a reviewing court, we must be cautious not to substitute our judgment for that of the trial court when there is sufficient competent and credible evidence supporting its findings of fact. *State v. Schiebel* (1990), 55 Ohio St.3d 71, 74, 564 N.E.2d 54, 60. In this case, the evidence does not clearly and convincingly support the court's conclusion that respondent was not justified in his failure to communicate with his children.

Accordingly, respondent's second assignment of error is sustained. This case is remanded to the Summit County Court of Common Pleas, Probate Division, to enter judgment in accordance with this decision.

*Judgment accordingly.*

CACIOPPO, P.J., and COOK, J., concur.