[Cite as *In re Adoption of K.O.D.K.*, 2016-Ohio-1003.]

COURT OF APPEALS
ASHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
| --- | --- | --- |
| IN THE MATTER OF: THE | : | Hon. Sheila G. Farmer, P,.J. |
| ADOPTION OF K.O.D.K. | : | Hon. W. Scott Gwin, J. |
|  | : | Hon. Patricia A. Delaney, J. |
|  | : |  |
|  | : | Case No. 15-COA-039 |
|  | : |  |
|  | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Civil appeal from the Ashland County Court
                             of Common Pleas, Probate Division, Case
                             No. 20155011

JUDGMENT:                    Affirmed

DATE OF JUDGMENT ENTRY:      March 11, 2016

APPEARANCES:

For - Appellant

JOSEPH KEARNS, JR.
153 W. Main Street
P.O. Box 345
Ashland, OH 44805

*Gwin, J.,*

{¶1} Stepfather/appellant appeals the October 21, 2015 judgment entry of the Ashland County Court of Common Pleas, Probate Division, denying his petition to adopt K.Q. without Father/appellee's consent.

*Facts & Procedural History*

{¶2} K.Q., born October 30, 2012, is the biological child of appellee/Father R.Q. The child's mother, M.K., is married to appellant, R.K., the child's stepfather. On April 9, 2015, appellant filed a petition to adopt K.Q. Appellant alleged that appellee's consent for the petition to adopt was not required because appellee had not, without justifiable cause, had de minimus contact with the child for at least a year preceding the petition and/or failed, without justifiable cause, to provide for the maintenance and support of the child as required by law or judicial decree for at least a year preceding the petition. M.K. consented to the adoption, but appellee objected.

{¶3} The Probate Court scheduled a hearing on the petition for June 23, 2015. Appellee appeared at the hearing and requested a continuance, which the trial court granted. The Probate Court held an evidentiary hearing on appellant's petition on August 25, 2015.

{¶4} M.K. testified that R.Q. last saw K.Q. in January of 2013. She is not aware of any attempts by R.Q. to contact her or the child. M.K. never received any support from R.Q. in the form of child support or any other support such as diapers, food, or cash payments. M.K. is not aware of any proceedings by R.Q. to establish child support or a paternity action to establish a parent/child relationship. M.K. stated she is not trying to hide from R.Q.

{¶5} D.C., the child's maternal grandmother, testified she sees M.K. and K.Q. monthly and talks to M.K. almost daily. The last contact she knows that R.Q. had with K.Q. was when the child was a newborn. D.C. stated she is not hiding from R.Q. and that he knows where she lives because he has been to her house several times. R.Q. has never gone to D.C.'s house to ask how to locate the child.

{¶6} R.Q. testified that he and M.K. separated on December 12, 2012. He saw K.Q. for approximately three months after the separation. R.Q. stated that, at some point, M.K. moved and he did not know where she moved to. R.Q. stated he tried to contact M.K. several times after she moved, but she would change her number and not give him contact information. R.Q. testified that sometime after March of 2013, M.K. blocked his number from her phone and blocked him on Facebook. Further, R.Q. stated M.K. texted him and told him not to contact her or the child or she would file harassment charges against him. R.Q. was concerned because he was on probation at the time stemming from a disorderly conduct conviction.

{¶7} In July or August of 2013, R.Q. saw M.K. and K.Q. at a restaurant. R.Q. testified that when he attempted to speak to his son, M.K. yanked the car seat of his hands and told R.Q. he was not allowed to have contact with the child. In August of 2013, R.Q. went to Richland County Child Support to attempt to set up a child support order. R.Q. testified they told him he had to have proof the child was his before they could continue with the child support order. Further, that since M.K. was living in Ashland, he would have to establish a child support order through Ashland County Child Support. R.Q. stated he was saving up to get a DNA test, but did not save up the money to get one.

{¶8} On cross-examination, R.Q. admitted he never paid any support for the child. He found out M.K. lived in Ashland in August of 2013 from Richland County Child Support, but he did not know her address. With regards to the child's maternal grandmother, R.Q. knew she lived in Medina, but did not know exactly where since he was only there a handful of times and is bad at directions. R.Q. did not attempt to locate D.C. R.Q. stated there is still some doubt in his mind the child is his because when he was in jail, appellant was at his house. R.Q. was convicted of disorderly conduct, reduced from a domestic violence charge. M.K. was the victim in the case.

{¶9} When asked what he did to attempt to locate M.K. after August of 2013, R.Q. stated he tried driving around Ashland for two to three hours trying to find her van. R.Q. testified he completed probation on January 24, 2014. He drove around Ashland after completing probation. R.Q. stated in June of 2015 when he texted appellant to see how K.Q. was, appellant threatened him with harassment charges and told him not to contact the child.

{¶10} R.Q.'s girlfriend testified at the hearing that she saw M.K. rip the car seat out of R.Q.'s hand at the restaurant. Further, that she and R.Q. tried to find where M.K. was living, but were blocked on social media and via phone.

{¶11} On re-direct, M.K. testified that she never threatened to keep R.Q. from contacting her or K.Q.

{¶12} Via judgment entry filed on October 21, 2015, the trial court denied the adoption petition. Although the trial court found appellee failed to communicate and support during the one year period prior to the filing of the adoption petition, the trial court

found appellant failed to establish, by the requisite degree of proof, that appellee's failure to communicate and/or support was without justifiable cause.

{¶13} Specifically, the trial court found appellee presented some evidence as to why he did not provide maintenance and support when appellee testified that when he went to Richland County Child Support, they told him he had to go to Ashland to establish a child support order and discouraged him from pursuing a child support order until paternity is established. Further, that appellee provided testimony that for more than one year before the filing of the petition, he did not know where the child was living and this hindered him in providing support as he did not know where to send support and he was not permitted to have contact with the child. The trial court found appellee's consent to the adoption was necessary and dismissed the adoption petition because appellee did not consent to the adoption.

{¶14} Appellant appeals the October 21, 2015 judgment entry of the Ashland County Court of Common Pleas, Probate Division, and assigns the following as error:

{¶15} "I. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT FOUND THAT THE CONSENT OF THE BIOLOGICAL FATHER WAS NECESSARY AND DISMISSED THE ADOPTION PROCEEDING."

I.

{¶16} In his assignment of error, appellant argues the trial court erred in finding appellee's consent was necessary. Appellant contends there was not evidence of significant interference; appellee's effort to locate the child was minimal; appellee provided no money or gifts to the child; and appellee exhibited violence towards the child's mother.

{¶17} The Supreme Court of the United States has recognized that natural parents have a fundamental liberty interest in the care, custody, and management of their children. *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). A parent's right to raise a child is an essential civil right. *In re Murray*, 52 Ohio S.3d 155, 556 N.E.2d 1169 (1990). An adoption permanently terminates the parental rights of a natural parent. *In re Adoption of Reams*, 52 Ohio App.3d 52, 557 N.E.2d 159 (10th Dist. 1989). Thus, courts must afford the natural parent every procedural and substantive protection allowed by law before depriving the parent of the right to consent to the adoption of his child. *In re Hayes*, 79 Ohio St.3d 46, 679 N.E.2d 680 (1997).

{¶18} The termination of a natural parent's right to object to the adoption of his or her child requires strict adherence to the controlling statutes. *In re Adoption of Kuhlmann*, 99 Ohio App.3d 44, 649 N.E.2d 1279 (1994). Ordinarily, the written consent of a minor child's natural parents is required prior to adoption. R.C. 3107.07 provides exceptions to this requirement.

{¶19} R.C. 3107.07(A) states that consent to adoption is not required of:

A parent of a minor, when it is alleged in the adoption petition and the court, after proper service of notice and hearing, finds by clear and convincing evidence that the parent has failed without justifiable cause to provide more than de minimus contact with the minor or to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding either the filing of the adoption petition or the placement of the minor in the home of the petitioner.

**{¶20}** Appellant has the burden of proof in this action. "The party petitioning for adoption has the burden of proving, by clear and convincing evidence, that the parent failed to communicate with the child during the requisite one-year period and that there was no justifiable cause for the failure of communication." *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 481 N.E.2d 613 (1985). "No burden is to be placed upon the non-consenting parent to prove that his failure to communicate was justifiable." *Id.*

**{¶21}** With regard to support, the relevant inquiry is not whether the parent provided support as would be expected, "but whether the parent's failure to support * * * is of such magnitude as to be the equivalent of abandonment." *Gorski v. Myer*, 5th Dist. Stark No. 2005CA00033, 2005-Ohio-2604. A probate judge has discretion to determine whether the biological parent provided support as contemplated by R.C. 3107.07(A) "and his or her judgment should not be tampered with absent an abuse of discretion." *In re Adoption of Bovett*, 33 Ohio St.3d 107, 515 N.E.2d 919 (1987).

**{¶22}** "Once the clear and convincing standard has been met to the satisfaction of the probate court, the reviewing court must examine the record and determine if the trier of fact had sufficient evidence before it to satisfy this burden of proof." *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 481 N.E.2d 613 (1985). The determination of the probate court should not be overturned unless it is unsupported by clear and convincing evidence. *Id.* Clear and convincing evidence is the "measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established." *In re: Estate of Haynes*, 25 Ohio St.3d 101, 495 N.E.2d 23 (1986).

**{¶23}** With respect to a failure to support, the Ohio Supreme Court stated, "[t]he question of whether justifiable cause for failure to pay child support has been proven by

clear and convincing evidence in a particular case is a determination for the probate court and will not be disturbed on appeal unless such determination is against the manifest weight of the evidence." *In re Adoption of M.B.*, 131 Ohio St.3d 186, 2012-Ohio-236, 963 N.E.2d 142.

{¶24} Therefore, for appellant to prevail in this adoption proceeding without appellee's consent, he must prove by clear and convincing evidence that: (1) there has been a failure of communication or support by appellee for the one-year period and (2) the failure is unjustified.

{¶25} Appellant must also establish the failure to communicate or support was without justifiable cause. If the petitioner meets his burden of proof, then the natural parent has the burden of going forward with evidence to show some justifiable cause for his or her failure to support or contact the child. However, the burden of proof never shifts from the petitioner. *In re Adoption of Bovett*, 33 Ohio St.3d 102, 515 N.E.2d 919 (1987).

{¶26} *In re Holcomb* further held:

Significant interference by a custodial parent with communication between the non-custodial parent and the child, or significant discouragement of such communication, is required to establish justifiable cause for the non-custodial parent's failure to communicate with the child. The question of whether justifiable cause exists in a particular case is a factual determination for the probate court and will not be disturbed upon appeal unless such determination is unsupported by clear and convincing evidence.

18 Ohio St.3d 361, 481 N.E.2d 613, paragraph three of syllabus.

**{¶27}** A probate court may examine any preceding events that may have a bearing on the parent's failure to communicate with the child, and the court is not restricted to focusing solely on events occurring during the statutory one year period. *In re Adoption of L.R.K.*, 5th Dist. Muskingum No. CT2014-0040, 2015-Ohio-747, citing *In re Adoption of Lauck*, 82 Ohio App.3d 348, 612 N.E.2d 459 (9th Dist. 1992).

**{¶28}** In the instant case, the trial court found R.Q. presented evidence showing his failure to communicate and support was justified as a result of significant interference and discouragement of communication by M.K. R.Q. testified that: he did not know where M.K. and the child were living until he learned she moved to Ashland after visiting the child support office in Richland but still did not know an address or contact information for the child; he tried to contact M.K. several times after she moved, but she changed her phone number and/or blocked his number from her cell phone and blocked him on Facebook; M.K. would not give him her contact information; and M.K. told him not to contact her or the child or she would file harassment charges against him while he was on probation.

**{¶29}** R.Q. further stated that when he saw M.K. and the child at the restaurant, M.K. said he was not allowed to have contact with the child and yanked the car seat from his hands. In terms of support, R.Q. testified he attempted to establish a child support order in Richland, but they told him he would have to go to Ashland County where M.K. lived to establish the order and should complete a paternity test first. R.Q. additionally stated he did not send money, gifts, or food since he did not know where M.K. lived with the child.

{¶30} M.K. testified that she never threatened to keep R.Q. from contacting her or the child, never hid from R.Q. M.K. also stated she is not aware of any attempts by R.Q. to contact her or the child and has never received any support in the form of child support, diapers, food, or cash payments. M.K. is not aware that R.Q. has ever attempted to establish paternity.

{¶31} Though M.K. presented testimony that she did not discourage or interference with R.Q.'s communication or support of the child, R.Q. presented conflicting testimony. The trial court, as the trier of fact here, determines the weight and credibility of the evidence. *Seasons Coal Co., Inc. v. City of Cleveland*, 10 Ohio St.3d 77, 461 N.E.2d 1273 (1984). We may not substitute our judgment for that of the trier of fact. *Pons v. Ohio State Medical Board*, 66 Ohio St.3d 619, 614 N.E.2d 748 (1993).

{¶32} Here, the trial court obviously chose to believe the testimony of R.Q. regarding why he did not contact or support the child. From this testimony, the trial court could conclude R.Q.'s failure to maintain more than de minimus contact with and support to the child was justified due to significant interference and discouragement of communication by M.K. Moreover, as we have previously noted, "[n]o burden is to be placed upon the non-consenting parent to prove that his failure to communicate was justifiable." *In re D.N.O.*, 5th Dist. Stark No. 2012-CA-00239, 2013-Ohio-2512. We find there is sufficient evidence to support the trial court's decision. Appellant's assignment of error is overruled.

{¶33} Based on the foregoing, we overrule appellant's assignment of error. The October 21, 2015 judgment entry of the Ashland County Court of Common Pleas, Probate Division, is affirmed.


By Gwin, J.,

Farmer, P.J., and

Delaney, J., concur